UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA, W.[1],

|  |  |
|---|---|
| Plaintiff, | 19-CV-583-FPG |
| v. | DECISION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. |  |

## INTRODUCTION

On December 17, 2015, Plaintiff filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") alleging disability beginning on July 28, 2015. Tr.[2] at 99-100, 169-85. After the applications were initially denied, Plaintiff timely requested a hearing. Tr. 118. On April 23, 2018, she appeared with her non-attorney representative, Deborah A. Bowman, and testified before Administrative Law Judge Lynette Gohr ("the ALJ"). Tr. 34-80. A Vocational Expert ("VE"), Jay Steinbrenner, also testified at the hearing. Tr. 76-80. The ALJ issued an unfavorable decision on July 10, 2018. Tr. 20-28. Plaintiff then requested review by the Appeals Council, which the Council denied on March 12, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Subsequently, Plaintiff brought this action pursuant to Titles II and XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her applications for SSI and DIB.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 13, 16.

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 8.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion is DENIED, and the Commissioner's decision is REMANDED for further proceedings.

## LEGAL STANDARD

### I.      District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[4] If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 416.20(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claims for benefits using the process described above and determined that Plaintiff met the insured status requirement of the Act through December 31, 2019.

Tr. 22.  At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 28, 2015.  Tr. 22.  At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the cervical and lumbar spine status post anterior discectomy and fusion from C5 to C7; and asthma.  *Id.*  She also found that Plaintiff's hypertension, depression, anxiety, and intermittent explosive disorder were non-severe impairments.  Tr. 23.  At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing of impairments.  Tr. 24.  The ALJ then determined that Plaintiff retained the RFC to perform sedentary work, except that she

> can occasionally climb ramps and stairs, can never climb ladders, ropes and scaffolds, can occasionally stoop, kneel, crouch and crawl, can never reach overhead with the bilateral upper extremities, can perform no overhead work, cannot perform repetitive neck movements (defined as movements that require essentially the same, repeated neck motions that must be completed in a regular, repetitive sequence without an opportunity for a break such as on a production line, where an individual would be required to turn his or her neck to identify an object coming down the line, turn it again to manipulate the object, and turn it once more to send the object on its way), can frequently finger and handle bilaterally, can perform all ambulation with the use of a cane, after sitting for 30 minutes needs to change position to standing and/or walking for 2 minutes and would be off task for those 2 minutes, and because of pain is limited to simple routine tasks and simple work-related decisions, can tolerate minimal changes in work routines and processes, is able to work in a low stress work environment (defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes).

*Id.*  At Step Four of the sequential analysis, the ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. 26-27.  The ALJ then proceeded to Step Five, where she concluded that there were jobs in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform.  Tr. 27.  Specifically, the ALJ found that Plaintiff could work as a telemarketer, survey worker, and switchboard operator.  Tr. 28.

## II.    Analysis

The regulations provide that it is the ALJ who is tasked with making an RFC determination based on the review of the entire record. *See* 20 C.F.R. § 416.927 (d)(2). That is why, when reviewing the Commissioner's disability determination, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (internal quotation marks omitted).

In concluding that Plaintiff was capable of performing sedentary work with numerous very specific limitations, the ALJ primarily relied on the opinion of a consultative examiner Dr. Liu, which she afforded "significant" weight because it was based on personal examination of Plaintiff, and was consistent with Plaintiff's treatment records and activities of daily living. Tr. 26. The ALJ also considered the opinion of Dr. Suddaby, Plaintiff's neurosurgeon, but afforded "lesser" weight to those portions of the opinion that did not contain an assessment of Plaintiff's functional limitations, and "little" weight to the part of the opinion that discussed Plaintiff's disability. *Id.* Plaintiff argues that neither opinion contained an assessment of her functional limitations, and, as such, the ALJ formulated Plaintiff's RFC by relying on her own lay opinion instead of a medical opinion from Plaintiff's treatment providers. ECF No. 13-1 at 21-25. She further argues that the opinion of the consultative examiner was stale. The Commissioner objects, arguing that the ALJ's determination was supported by substantial evidence because the ALJ was not required to rely on any particular medical opinion to formulate Plaintiff's RFC. ECF No. 16-1 at 16-17.

While the Court agrees with the Commissioner's recitation of the well-recognized legal standard formed in this Circuit, his argument is not pervasive considering the circumstances of this case. Therefore, the Court agrees with Plaintiff that remand is warranted here. Indeed, it has long been recognized that when analyzing the record as a whole, the ALJ does not have to rely on one particular medical opinion, and may formulate an RFC without the benefit of a formal medical opinion. *See, e.g., Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and relied on treatment records and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required). Additionally, when the record contains sufficient evidence from which the ALJ can access the claimant's RFC, *see Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013), or when the medical evidence shows a relatively minor physical impairment allowing the ALJ to render a common sense judgment about a claimant's functional capacity, an ALJ's reliance on a formal medical opinion may not be necessary. *House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). However, where, as here, Plaintiff suffers from several severe impairments, and where the record does not relate Plaintiff's diagnoses to her functional abilities, the ALJ is not qualified to make an RFC determination without relying on a medical opinion about Plaintiff's abilities to perform work on a continuous and substantial basis. *See Barnhardt v. Saul*, No. 18-CV-6632-MJP, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020) ("[E]ven though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do

6

not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself."). Consequently, when making an RFC determination, an ALJ must rely on a medical opinion or other functional assessment from a medical source to translate Plaintiff's medical impairments into specific functional restrictions. *See Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) ("While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations *from a medical source*." (emphasis added and internal quotation and citation omitted)).

Here, the ALJ recognized that Plaintiff suffered from a degenerative disc disease of the cervical and lumbar spine status post anterior discectomy and fusion from C5 to C7, and asthma, the impairments that can hardly be considered minor. Tr. 22. She also identified and discussed Plaintiff's treatment records in her decision, however, none of the records contained sufficient findings about the effect of Plaintiff's impairments on her ability to work from which the ALJ could draw a conclusion about Plaintiff's abilities to perform work a sustained and continuous basis. Because "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quotations omitted), it is not clear how the ALJ here could translate these bare medical findings into specific functional abilities that she identified Plaintiff could perform, particularly, Plaintiff's ability to perform work in accordance with a highly complex sit/stand and neck movement restriction. *See Dailey v. Astrue*, No. 09-CV-0099(A)(M), 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (Because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings . . . [that] merely diagnose [the] claimant's exertional

impairments and do not relate these diagnoses to specific residual functional capabilities . . . [the Commissioner may not] make the connection himself."), *adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).

The record demonstrates that most of Plaintiff's physical limitations[5] stemmed from a motor vehicle accident in July 2015 in which Plaintiff, a pedestrian, was struck by a vehicle. Tr. 311, 502-16. As a result of the accident, Plaintiff sustained injuries in the cervical and lumbar regions of her spine, which included bulging with stenosis of C3-C4 and C4-C5 discs, herniation with moderate to severe stenosis and compression of the cord of C5-C6 and C6-C7, herniation of the protrusion type of T11-T12, and bulge and herniation of L3-L4, L4-L5, L5-S1 discs. Tr. 348-51, 352-60. Since the accident, Plaintiff consistently complained about having significant pain in her neck and lower back, weakness and numbness in her hands, arms and legs, difficulty walking, and urinary incontinence with bowel movement. Tr. 361-41, 449-51, 460-68, 589-06, 693-05, 740-42. Following the accident, Plaintiff regularly sought treatment from her primary care physicians, two neurosurgeons, and a chiropractor, underwent a cervical microdiscectomy and fusion surgery on her neck, and received epidural steroid injections in her lower back. *Id.* Even though Plaintiff experienced periods of improvement of her symptoms during treatment, such improvement was temporary, and, as such, should not have been relied on by the ALJ to discount Plaintiff's allegations as non-credible or determine that she was capable of working. *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020) (summary order) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.") (internal citations omitted).

---

[5] Because Plaintiff does not object to the ALJ's formulation of her mental RFC, the Court will focus its analysis on Plaintiff's physical RFC only.

Dr. Liu's opinion, which the ALJ afforded substantial weight to, did not provide sufficient specificity about Plaintiff's functional abilities that would allow the ALJ to craft such a highly specific RFC. Tr. 501. Even though Dr. Liu acknowledged Plaintiff's history of chronic neck pain, restrictions in flexion and extension of her cervical and lumbar spine, and ultimately concluded that Plaintiff was moderately limited in prolonged walking, bending, kneeling, and overhead reaching, it is unclear how the ALJ translated such vague opinions into the highly-specific RFC, which would allow Plaintiff to perform sedentary work with occasional climbing of ramps and stairs, but never ladders, ropes, or scaffolds, occasional stooping, kneeling, and crouching without overhead reaching with both arms or repetitive neck movements, and with changing position to standing and/or walking for 2 minutes after sitting for 30 minutes. While an RFC assessment does not have to mirror any particular medical opinion, *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision"), in a case like this one, where the record is devoid of an assessment of Plaintiff's physical capabilities, a vague medical opinion of a consultative examiner does not constitute substantial evidence. *See Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *11 (W.D.N.Y. July 2, 2012) (an opinion by the consultative examiner that plaintiff had moderate physical limitations was too vague to serve as a proper basis for plaintiff's RFC and inconsistent with the RFC findings of sedentary work).

Additionally, the Court is concerned with the ALJ's reliance on Dr. Liu's opinion because it was rendered nearly two years prior to the ALJ's decision and did not account for the deterioration of Plaintiff's impairments. Generally, a stale medical opinion does not constitute substantial evidence that the ALJ can rely on in making a disability determination. *See Camille v.*

9

*Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order).  However, the mere passage of time does not render an opinion stale, unless it fails to recognize evidence of deterioration of a claimant's condition.  *See, e.g.*, *Vazquez v. Saul*, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (significant developments in an individual's medical history after the examination might render an opinion stale); *Whilehurst v. Berryhill*, 1:16-cv-01005-MAT, 2018 WL3868721, *4 (W.D.N.Y. Aug. 14, 2018) ("[A] medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated."); *cf. Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition.").

Even though during his examination Dr. Liu noted Plaintiff's limitations in her cervical and lumbar spine, complaints of numbness and tingling in hands and toes, and urination incontinence, Plaintiff's examination was otherwise unremarkable.  Tr. 499-500.  She had full strength and range of motion in her hands, upper and lower extremities, normal station, no sensory abnormality or instability, and used no assistive device during his examination.  *Id.*  However, the review of the record following Dr. Liu's examination demonstrates the worsening of most of Plaintiff's symptoms associated with her back impairment. For instance, Plaintiff continued to have an ongoing pain in her neck following the surgery and had very little bone growth in her fusion cages following the C5-C7 cervical microdiscectomy and fusion surgery performed by neurosurgeon Dr. Suddaby.  Tr. 581, 584, 585.  Even though Plaintiff reported temporary periods of relief of her symptoms following the surgery and Dr. Liu's examination, the record demonstrated that her neck pain, particularly on the left side of her body, was getting worse and

10

felt "like pins and needles when she pressed on things." Tr. 680. As for Plaintiff's lumbar back, Dr. Suddaby noted the progression of "fairly severe spondylitic change" in Plaintiff's lumbar spine. Tr. 581. Subsequent examinations by her treatment providers demonstrated Plaintiff's intensified complaints of her having weakness in both arms or only left arm, clumsiness and weakness in both hands that caused Plaintiff to drop things, difficulties with walking, and having partial paralyses of her legs. Tr. 585, 604, 680. The record is clear that the numbness in Plaintiff's left arm had gotten particularly worse, and included shooting, stinging, buzzing, and a burning type of pain that went down Plaintiff's left arm into her left hand, which she experienced several times a day. Tr. 680, 693, 740. Dr. Siddiqui, Plaintiff's neurosurgeon, opined that her upper extremities symptoms were caused by ulnar neuropathy. Tr. 741.

A nerve conduction study performed two years after Dr. Liu's examination demonstrated that Plaintiff had a chronic, moderate in severity C8 radiculopathy. Tr. 745. Even though Dr. Liu did not note any concerns with Plaintiff's stability during his examination, following his examination, Plaintiff started to report issues with instability that she experienced multiple times a day due to having weakness in her ankles, which ultimately resulted in Plaintiff being prescribed a cane and eventually a walker by her primary care physician. Tr. 46, 604, 680. Her primary care provider also approved her to have an emergency button, commode, shower chair, and grab bars in her home. Tr. 693, 702. Plaintiff's incontinence has also worsened since she was examined by Dr. Liu, and included bowel movements and urination, which caused Plaintiff to wear an adult diaper to control the issue. Tr. 69, 604, 680. Her abilities to cook, clean, and perform other household activities have also changed to the point where she no longer was able to cook and clean and relied on a weekly assistance with all her daily tasks from an aid or her daughter. Tr. 55-60. Therefore, because the record contains substantial evidence demonstrating the worsening of

Plaintiff's conditions since she was examined by Dr. Liu, it was improper for the ALJ to primarily rely on his opinion to determine Plaintiff's RFC. *See Hawkins v. Colvin,* No. 15-CV-6394 CJS, 2016 WL 6246424, at *3 (W.D.N.Y. Oct. 26, 2016) (the report of a consultative examiner was stale because it was issued prior to plaintiff's degenerative disc disease becoming symptomatic).

Therefore, with the ALJ's reliance on a vague and stale opinion of a consultative examiner, as well as the ALJ's substitution of her lay opinion for a medical opinion from Plaintiff's treating providers assessing Plaintiff's abilities to function in a work setting and how Plaintiff's limitations affected her ability to work, remand for further proceedings is warranted. On remand, the Commissioner may "employ one of the several methods available to ensure that there is a competent medical opinion in the record," including "requesting additional information from a treating physician, obtaining [a] consultative examination, or requesting an opinion from a medical expert." *Brauer v. Comm'r of Soc. Sec.*, 17-CV-1288, 2019 WL 3074060, at *6 (W.D.N.Y. July 15, 2019). "This may help to avoid a situation in which the ALJ is left without guidance from a medical source." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is DENIED. The matter is REMANDED for further proceedings consistent with the Decision and Order. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: January 26 2021
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court